| | | |
|---|---|---|
| **ANNETTE BEAL** | * | **NO. 2021-CA-0187** |
| **VERSUS** | * | |
| | | **COURT OF APPEAL** |
| **WESTCHESTER SURPLUS** | * | |
| **LINES INSURANCE** | | **FOURTH CIRCUIT** |
| **COMPANY, ET AL.** | * | |
| | | **STATE OF LOUISIANA** |

**\* \* \* \* \* \* \***

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2018-01145, DIVISION "J-15"
Honorable D. Nicole Sheppard,
\* \* \* \* \* \*
**Judge Regina Bartholomew-Woods**
\* \* \* \* \* \*
(Court composed of Judge Joy Cossich Lobrano, Judge Regina Bartholomew-Woods, Judge Paula A. Brown)

Michael C. Ginart, Jr.
Joyce Duhe Young
Nicholas N.S. Cusimano
John C. Ginart
LAW OFFICES OF  MICHAEL C. GINART, JR. & ASSOCIATES, L.L.C.
2114 Paris Road
Chalmette, Louisiana   70043

     COUNSEL FOR APPELLANT/ANNETTE BEAL

Lambert J. Hassinger, Jr.
Jeffrey J. Siemann
GALLOWAY JOHNSON TOMPKINS BURR & SMITH
701 Poydras Street, 40th Floor
New Orleans, Louisiana  70139

     COUNSEL FOR DEFENDANTS/APPELLEES

        **AFFIRMED**
        **DECEMBER 15, 2021**

*RBW*

*JCL*

*PAB*

In this trip and fall case, Plaintiff, Annette Beal ("Mrs. Beal"), seeks review of the trial court's judgment granting summary judgment in favor of Defendants, French Quarter Festivals, Inc., and Audubon Nature Institute, Inc. ("FQF and Audubon Institute"). FQF and Audubon Institute sought summary judgment, asserting that pursuant to Louisiana's recreational use immunity statutes they were not liable for Mrs. Beal's injuries and that the alleged hazard was open and obvious. Mrs. Beal opposed the motion for summary judgment, claiming that FQF and Audubon Institute are not entitled to immunity and that the hazard was not open and obvious. For the reasons that follow, we find FQF and Audubon Institute are entitled to immunity pursuant to the recreational use immunity statutes. Accordingly, we affirm the trial court's granting of FQF and Audubon Institute's motion for summary judgment.

### FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In April 2017, Mrs. Beal and her husband, Howard Beal ("Mr. Beal"), attended the French Quarter Festival ("the Festival"). They arrived in the French Quarter around 3:00 p.m. and proceeded to Woldenberg Riverfront Park. Mr. and Mrs. Beal found seats near one of the music stages located in the park. When Mr. Beal left to go get a drink, Mrs. Beal proceeded to the portable toilets. She walked to and used the portable toilets without incident. As she was returning to her seat, she tripped and fell over an exposed tree root. Mrs. Beal stated that she did not see the tree root and further acknowledged that she was not looking down as she was walking back to the stage area. She stated that upon examination, the tree root was covered with natural tree debris. Mr. Beal stated that he did not see his wife fall; however, he was alerted to the incident when he went looking for her after he returned to their seats. The paramedics were called, and Mrs. Beal was transported to the hospital by ambulance. Mrs. Beal alleges she sustained a trimalleolar fracture to her ankle, which required surgery.

Mrs. Beal filed suit in February 2018, seeking damages for injuries allegedly sustained because of her trip and fall while attending the Festival. She named as defendants, FQF, FQF's insurer Westchester Surplus Lines Insurance Company, John Doe, an alleged FQF employee, and the City of New Orleans.[1] She filed a

---

[1]The City of New Orleans filed a motion for summary judgment in September 2019, asserting it did not have control or custody over the area where Mrs. Beal allegedly tripped and fell. The City acknowledged that it owned the property in question, but the land on which the Aquarium of the Americas and Woldenberg Riverfront Park is situated is leased to the Audubon Park Commission, an independent agency of the City. The Audubon Park Commission contracted with Audubon Institute to administer, operate and maintain all the Commission's facilities. In April 2016, the FQF contracted with the Audubon Institute to use Woldenberg Riverfront Park for the Festivals occurring in years 2016-2018. The City was not a party to the agreement. In

supplemental and amending petition in July 2018, adding as defendants Audubon Institute and its alleged insurer XYZ Insurance Company.[2]

In June 2020, FQF and Audubon Institute filed a motion for summary judgment. Mrs. Beal filed an opposition, and the matter was heard in November 2020. On December 21, 2020, the trial court rendered a written judgment granting FQF and Audubon Institute's motion for summary judgment. Mrs. Beal subsequently filed the present appeal.

### STANDARD OF REVIEW

Appellate courts review summary judgment *de novo*. *Independent Fire Ins. Co. v. Sunbeam Corp.*, 99-2181, p. 7 (La. 2/29/00), 755 So.2d 226, 230. Therefore, we apply the same standard the trial court uses in considering whether summary judgment is appropriate by determining if genuine issues of material fact exist. *Francis v. Union Carbide Corp.*, 12-1397, p. 3 (La. App. 4 Cir. 5/8/13), 116 So.3d 858, 860 (*citing King v. Dialysis Clinic Inc.*, 04-2116, p. 5 (La. App. 4 Cir. 1/4/06), 923 So.2d 177, 180). Summary judgment is granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show there is no genuine issue of material fact. La. C.C.P. art. 966(A)(3)-(4). Facts are material if they "insure or preclude recovery, affect a litigant's ultimate success, or determine the outcome of the legal dispute." *FMC Enterprises, L.L.C. v. Prytania-St. Mary*

January 2020, in a consent judgment, the City's motion for summary judgment was granted and the City was dismissed from the litigation with prejudice.

[2] In April 2019, Audubon Institute filed a cross claim against FQF and Westchester and a third-party demand against National Casualty Company, alleging that Audubon Institute was an additional named insured under the liability policy issued to FQF. Audubon Institute voluntarily dismissed its cross claim against FQF and Westchester in May 2019, and voluntarily dismissed its third-party demand against National Casualty Company in July 2019, after FQF and Westchester agreed to provide a defense for and indemnification to Audubon Institute.

*Condominiums Ass'n, Inc.*, 12-1634, p. 6 (La. App. 4 Cir. 5/15/13), 117 So.3d 217, 222 (citing *Smith v. Our Lady of the Lake Hosp., Inc.*, 93-2512, p. 27 (La. 7/5/94), 639 So.2d 730, 751).

The moving party carries the initial burden of showing that no genuine issue of material fact exists, and "[a]ny doubt…regarding a material issue of fact must be resolved against granting the motion and in favor of a trial on the merits." *Barbarin v. Dudley*, 00-0249, p. 6 (La. App. 4 Cir. 12/20/00), 775 So.2d 657, 660. Where the moving party does not bear the burden of proof at trial, the moving party need only show there is an absence of factual support for one or more essential elements of the claim. *Smith v. Treadway*, 13-0131, p. 4 (La. App. 4 Cir. 11/27/13), 129 So.3d 825, 828. "The burden of proof does not shift to the party opposing the summary judgment until the moving party first presents a *prima facie* case that no genuine issues of material fact exist." *Bush v. Bud's Boat Rental, LLC*, 13-0989, p. 3 (La. App. 4 Cir. 2/26/14), 135 So.3d 1189, 1191 (citing *Oakley v. Thebault*, 96-0937, p. 3 (La. App. 4 Cir. 11/13/96), 684 So.2d 488, 490). At that point "[t]he burden then shifts to the adverse party who has the burden to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law." *Bercy v. 337 Brooklyn, LLC*, 20-0583, p. 3-4 (La. App. 4 Cir. 3/24/21), 315 So.3d 342, 345 (citing La. C.C.P. art. 966(D)(1)); *See also Encalade v. A.H.G. Sols., LLC*, 16-0357, p. 9-11 (La. App. 4 Cir. 11/16/16), 204 So.3d 661, 666-67.

## DISCUSSION

### Assignments of Error

On appellate review, Mrs. Beal asserts three (3) assignments of error:

(1) the trial court erred when it granted FQF and Audubon Institute's motion for summary judgment, finding that FQF and Audubon Institute are entitled to immunity under the recreational use immunity statutes;

(2) the trial court erred when it did not find that FQF and Audubon Institute's actions fell under the exception for willful and malicious failure to warn against a dangerous condition, use, structure, or activity; and

*(3)* the trial court erred in finding the tree root, which caused Mrs. Beal to trip and fall, was an open and obvious hazard.

### Recreational Use Immunity

Louisiana's recreational use immunity statutes grant immunity to owners, lessees, and occupants of property used for recreational purposes. La. R.S. 9:2791 provides in pertinent part:

> A. An owner, lessee, or occupant of premises owes no duty of care to keep such premises safe for entry or use by others for hunting, fishing, camping, hiking, sightseeing, or boating or to give warning of any hazardous conditions, use of, structure, or activities on such premises to persons entering for such purposes, whether the hazardous condition or instrumentality causing the harm is one normally encountered in the true outdoors or one created by the placement of structures or conduct of commercial activities on the premises. If such an owner, lessee, or occupant gives permission to another to enter the premises for such recreational purposes he does not thereby extend any assurance that the premises are safe for such purposes or constitute the person to whom permission is granted one to whom a duty of care

is owed, or assume responsibility for or incur liability for any injury to persons or property caused by any act of person to whom permission is granted.

La. R.S. 9:2795 states in part:

A. As used in this Section:
(1) "Land" means urban or rural land, roads, water, watercourses, private ways or buildings, structures, and machinery or equipment when attached to the realty.
(2) "Owner" means the possessor of a fee interest, a tenant, lessee, occupant or person in control of the premises.
(3) "Recreational purposes" includes but is not limited to any of the following, or any combination thereof: hunting, fishing, trapping, swimming, boating, camping, picnicking, hiking, horseback riding, bicycle riding, motorized, or nonmotorized vehicle operation for recreation purposes, nature study, water skiing, ice skating, roller skating, roller blading, skate boarding, sledding, snowmobiling, snow skiing, summer and winter sports, or viewing or enjoying historical, archaeological, scenic, or scientific sites.
(4) "Charge" means the admission price or fee asked in return for permission to use lands.
(5) "Person" means individuals regardless of age.

B. (1) Except for willful or malicious failure to warn against a dangerous condition, use, structure, or activity, an owner of land, except an owner of commercial recreational developments or facilities, who permits with or without charge any person to use his land for recreational purposes as herein defined does not thereby:
(a) Extend any assurance that the premises are safe for any purposes.
(b) Constitute such person the legal status of an invitee or licensee to whom a duty of care is owed.
(c) Incur liability for any injury to person or property caused by any defect in the land regardless of whether naturally occurring or man-made.

\*\*\*

E. (2)(a) The limitation of liability provided by this Section shall apply to any lands, whether urban or rural, which are owned, leased, or managed as a public park by the state or any of its political subdivisions and which are used for recreational purposes.

6

Mrs. Beal alleged that she tripped and fell over a raised tree root in Woldenberg Riverfront Park, a man-made park created on the levee and surrounding area on the Mississippi River and adjacent to the Aquarium of the Americas. The park is open to the public and used for walking, jogging, picnicking, and as a walkway from the French Quarter to the Aquarium of the Americas and Riverwalk. The park includes benches and sitting areas, where the public can view the Mississippi River. As contemplated by the recreational immunity statutes, the property falls within the definition of a public recreational area. Mrs. Beal contends that FQF and Audubon Institute are not immune from liability because the statutes were not intended to include, and do not include, immunity for a music festival. She asserts that the statutes are only meant to apply to activities that occur in the true outdoors.

Since the enactment of the immunity statutes, legislative amendments have expanded the scope of immunity for protected classes and activities. *See Richard v. Hall*, 03-1488, p. 25-28 (La. 4/23/04), 874 So.2d 131, 149-51 (examining the legislative history in the creation of the recreational use immunity statutes and the interplay between La. R.S. 9:2791 and La. R.S. 9:2795). Jurisprudence interpreting the recreational use immunity statutes recognizes that the list of activities set forth in the definition of "recreational purposes" is nonexclusive and includes activities that are not specifically listed. *Doyle v. Lonesome Dev., Ltd. Liab. Co.*, 17-0787, p. 11 (La. App. 1 Cir. 7/18/18), 254 So.3d 714, 722 (concluding that soccer was included within the definition of "recreational

purposes" and qualified as a recreational activity); *See, e.g. Webb v. Parish of St. Tammany*, 06-0849, p. 6 (La. App. 1 Cir. 2/9/07), 959 So.2d 921, 925 (recognizing softball was a recreational activity even though plaintiff was injured after the game and was exiting the park).

Additionally, jurisprudence demonstrates that the statutes can apply even when the person injured is not a participant in the sport. In *Richard v. La. Newpack Shrimp Co., Inc.*, 11-309 (La. App. 5 Cir. 12/28/11), 82 So.3d 541, the Fifth Circuit considered whether the immunity statute applied to preclude liability for injuries sustained when the plaintiff fell into a hole on the levee which led to a boating ramp. The plaintiff was walking on the levee to reach the boating ramp, where she intended to board a boat. The court concluded that the statute applied, stating "La. R.S. 9:2795(A)(3) expansively defines 'recreational purposes' as including but not limited to the enumerated list…." *Id.*, 11-309, p. 9, 82 So.3d at 546. Therefore, the court found "Mrs. Richard's activity was covered by that omnibus clause 'includ[ing] but not limited to.' La. R.S. 9:2795(A)(3)." *Id.* The *Richard* court reasoned that "[t]he 'including, but not limited to' language makes clear that the Legislature did not intend that the list of enumerated activities was exhaustive." *Id.* The court further explained:

> The plain wording of the Immunity Act only requires that the lessee permits with or without charge any person to use his land for recreational purposes. La. R.S. 9:2795(B)(1). **The statute does not require that the injury arise out of the recreational activity *per se*, as long as the person injured was on the property for a recreational purpose**. *Webb v. Parish of St. Tammany,* 06-0849, p. 6 (La. App. 1 Cir. 2/9/07), 959 So.2d 921, 925, *writ denied,* 07-0521 (La. 4/27/07), 955

8

So.2d 695 (citation omitted).

\*\*\*

> The sole purpose of Mrs. Richard's walk over the defendant's levee property was to gain access to the boat to use for recreational purposes. The walk was an integral part of the recreational activities. Assuming non-recreational use of the levee for commercial fishing did take place, it did not affect the recreational use in question. As we see it, **the inquiry in any given case is whether the permitted use in question is for recreational purposes on a noncommercial basis**. *Broussard v. Dep't of Transp. & Dev., State of La.,* 539 So.2d 824, 831 (La. App. 3 Cir.1989).

*Id.*, 11-309, p. 9-11, 82 So.3d at 546-547 (Emphasis added).

Mrs. Beal points to the Fifth Circuit's decision in *Glorioso v. City of Kenner*, 19-298 (La. App. 5 Cir. 12/18/19), 285 So.3d 601, in support of her contention that the Festival is not a recreational activity within the scope of the recreational use immunity statutes. In *Glorioso*, the plaintiff's five-year-old daughter was attending a gymnastics class at a gym owned by the City of Kenner and operated by its Parks and Recreation Department. During the class, the plaintiff's daughter slid off a stage and cut her right thigh and buttock on a broken metal electrical box located at the front of the stage. The plaintiff sought damages on behalf of his daughter, alleging negligence and premises liability. The City of Kenner filed a motion for summary judgment, arguing they were immune from liability pursuant to La. R.S. 9:2795. The trial court granted summary judgment, and on appeal, the Fifth Circuit reversed the trial court's judgment.

On appeal, the plaintiff averred that the trial court erroneously interpreted the language of the recreational use immunity statutes to include gymnastics within the definition of recreational purposes and to include any building, whether "attached to the realty" within the definition of land. The City of Kenner argued

9

that urban land and buildings, including the gym at issue, were included under the statute; and further, the gym was used for recreational purposes under the "unlimited omnibus clause." In reversing the trial court's granting of summary judgment, the Fifth Circuit explained:

> The activities enumerated in the statute are clearly activities that are typically done in, and require, the true outdoors, such as fishing, hunting, and camping. And while a very limited few of the activities enumerated in the statute, typically done in the true outdoors, might conceivably also be done indoors, this does not evidence an intent on the part of the legislature to expand the immunity of the statute to include *all* recreational activities regardless of whether they are typically done outdoors or indoors. In our opinion, the list of enumerated activities evidences a clear intent of the legislature to grant immunity for those recreational activities in which one engages in the true outdoors. Strictly construing this statute, as we are required to do, we find that gymnastics is not a recreational purpose as contemplated by La. R.S. 9:2795(A)(3) and as required under Subsection E(2)(a) for the grant of immunity for Kenner.

*Glorioso*, 19-298, p. 5-6, 285 So.3d at 605 (Emphasis in original).

*Glorioso* is distinguishable from the case before us. The activity in which the plaintiff's daughter was involved when she was injured was conducted inside a building. The *Glorioso* court noted that gymnastics was not a sport that was generally conducted outdoors, and in fact, the plaintiff's daughter was indoors when the injury occurred. *Cf.*, *Webb*, 06-0849, p. 6, 959 So.2d at 925 (finding softball was a recreational activity even though plaintiff was injured after the game when he was exiting the park). In this case, both the musical festival Mrs. Beal was attending and the injury she sustained when she tripped and fell over a tree root occurred outdoors. As the First and Fifth Circuits note, the statute does not require that the injury arise out of the recreational activity *per se*, as long as the

10

person injured was on the property for a recreational purpose. *Id.*; *Richard v. La. Newpack Shrimp Co.*, 11-309, p. 10, 82 So.3d at 547. Although a music festival can occur indoors, there are numerous festivals in Louisiana which occur outdoors. The issue becomes whether attending a music festival is considered an event generally held in the true outdoors. In that there are no Louisiana cases which have previously addressed this issue, the matter is one of first impression.

Two states that have considered this issue include Washington and Wisconsin. In *Matthews v. Elk Pioneer Days*, 64 Wash. App. 433, 824 P.2d 541 (1992), the plaintiff sued for injuries she sustained when a canopy fell on her while attending the Elk Pioneer Days Festival, put on by a Washington nonprofit corporation. "The festival is held outdoors on the grounds of the Elk Community Church…and consists of entertainment, competitions, and demonstrations. There is no charge for the event, although the public may purchase food or arts and crafts from various concessionaires who are charged a nominal fee by the Committee…." *Id.*, 64 Wash. App. at 435; 824 P.2d at 541. The plaintiff argued, in opposition, that "outdoor recreation" under Washington's recreational use immunity statute, RCW 4.24.210, did not include the activity of attending a weekend celebration or watching entertainment on an outdoor stage. The *Matthews* court discussed and distinguished a Wisconsin case cited by defendant.

In *Hall v. Turtle Lake Lions Club*, 146 Wis.2d 486, 431 N.W.2d 696 (Ct. App. 1988), the plaintiff was injured when he stepped into a hole on the grounds of the Turtle Lake Village Park during a fair sponsored by the Turtle Lake Lions Club. The Wisconsin court found that statutory immunity applied, relying upon the statement of legislative intent that "where substantially similar circumstances or activities [to those enumerated in the statute] exist, this legislation should be

liberally construed in favor of property owners to protect them from liability." *Hall*, 431 N.W.2d at 697 (quoting section 1 of Wis. Act 418). The court concluded that a fair is "substantially similar" to several of the examples of the kinds of activities set forth in the definition of recreational activity: "nature study," "sight-seeing," as well as "any other...educational activity." *Hall*, 431 N.W.2d at 697 (internal quotations omitted). The *Matthews* court distinguished *Hall* on the basis that the statutes differed in the type of construction that should be given to the language of the statutes. The court noted that Washington's statute, RCW 4.24.200–.210, did "not provide for a policy of liberal construction in favor of property owners." *Matthews*, 64 Wash. App. at 437, 824 P.2d at 543. The court found that festival activity is not similar to the examples of outdoor recreation given in the Washington statute. The court concluded that the Washington recreational use statute should be strictly construed. *Id.*, 64 Wash. App. at 439; 824 P.2d at 544. Applying a strict construction, the Washington court found that the festival was not "outdoor recreation" under the statute and reversed the trial court's granting of the defendant's motion for summary judgment. *Id.*

In *Richard v. Hall*, the Louisiana Supreme Court expressly stated that "[t]he enactment of La. [R.S.] 9:2795, a second more expansive immunity statute, evidences an intent on the Legislature's part that these statutes are to grant a broad immunity from liability. The amendments to the statutes indicate the Legislature's will to expand the immunity." *Id.*, 03-1488, p. 28, 874 So.2d at 151. Like Wisconsin's recreational use statute, Louisiana's recreational use immunity statutes should be interpreted broadly. We therefore find this case more akin to *Hall* than *Matthews*.

The Festival was created with the purpose of promoting the French Quarter

and the City's culture and heritage. The Festival is a free event where local musicians perform, and local food/beverage vendors sell their product to the public. The Festival is intended to take place outdoors and feature the natural and architectural aspects of the French Quarter. Woldenberg Riverfront Park, the area where the Beals were attending the Festival, was created, in part, for the public to enjoy the scenic views of the Mississippi River. Further, when inclement weather has threatened the event, the Festival is shortened, canceled, or rescheduled. The Festival's events are not moved to an indoor location. Mr. Beal acknowledged that in the past there were times they did not attend the Festival because of the weather. La. R.S. 9:2795(A)(3) expansively defines recreational purposes as including but not limited to the enumerated list. Among the listed activities is "viewing or enjoying historical, archaeological, scenic, or scientific sites." La. R.S. 9:2795(A)(3). Because the Festival is intended to take place outdoors and features the natural and architectural aspects of the French Quarter, including the Mississippi River, along which Woldenberg Riverfront Park is located, we find that the definition of recreational purposes is broad enough to include the activities normally associated with attending an outdoor music festival, like the Festival. Therefore, we find the festival is covered under Louisiana's recreational use immunity statutes.

### *Willful and/or Malicious Failure to Warn*

Mrs. Beal, in her second assignment of error, contends that even if this Court determines that the recreational use immunity statutes apply, FQF and Audubon Institute are liable for her injuries because their failure to warn of a dangerous condition was willful and/or malicious.

13

Louisiana Revised Statute 9:2795(B)(1) states that a defendant is not entitled to immunity where there is "willful or malicious failure to warn against a dangerous condition, use, structure, or activity." Once a defendant has established that it is entitled to immunity under La. R.S. 9:2795, the burden of establishing a malicious or willful failure to warn of a dangerous condition shifts to the plaintiff. *Richard v. La. Newpack Shrimp Co., Inc.*, 11-309, p. 12, 82 So.3d at 548 (citing *DeLafosse v. Vill. of Pine Prairie*, 08-0693, p. 5 (La. App. 3 Cir. 12/10/08)) 998 So.2d 1248, 1252). "A failure to warn of a dangerous condition connotes a conscious course of action, and is deemed willful or malicious when action is knowingly taken or not taken, which would likely cause injury, with conscious indifference to consequences thereof." *Robinson v. Jefferson Parish Sch. Bd.*, 08-1224, p. 18 (La. App. 5 Cir. 4/7/09), 9 So.3d 1035, 1046. A defendant owes a duty to discover any unreasonably dangerous condition on the premises and either correct it or warn potential victims of its existence. *Doyle*, 17-0787, p. 17, 254 So.3d at 725. However, "this duty does not extend to potentially dangerous conditions which should have been observed by an individual in the exercise of reasonable care or which are as obvious to a property owner as to a visitor." *Id.*

In *DeLafosse*, the plaintiff argued that the defendant's employees were grossly negligent in the placement and configuration of the bleachers at the ballpark and in maintaining only a four-foot fence to protect the patrons. The plaintiff argued that the defendant knew or should have known that a four-foot fence would not contain flying baseballs. The Third Circuit found that the plaintiff did not present any evidence that would support her argument that the defendant was grossly negligent in the configuration of the stands or in the maintenance of the four-foot fence. Similarly, the court in *Richard v. La. Newpack Shrimp Co.,*

14

*Inc.*, found that considering the plaintiff's testimony that she was aware of the ruts in the levee before the accident, the defendant's duty did not extend to the alleged obvious potentially dangerous condition.

Mrs. Beal points to the deposition testimony of Abraham Gaulton ("Mr. Gaulton"), the operations manager for FQF, and the affidavit of her expert witness Brian Avery as evidence that FQF and Audubon Institute had a duty to warn of the alleged dangerous condition. Mr. Gaulton stated in his deposition testimony that he and an employee of Audubon Institute would inspect the venue property prior to moving on the site. FQF prepared the layout of the event and Audubon Institute approved it, including the location for the portable toilets. Audubon Institute provided maintenance and grounds keeping year-round.

Mr. Avery attested that he was experienced in the development and implementation of management practices, safety directives, use of safety devices/equipment, identification, and protection processes to eliminate environmental conditions, assessment of facility appropriateness, staff/patron abilities, and the duty to supervise. Upon reviewing the pleadings, depositions, contracts, discovery, and photographs, he opined that the pathway provided for access to the portable toilets was not a reasonably safe walking surface for patrons attending an event to regularly traverse to access the portable toilets. He concluded that the defendants:

> …increased the risk of hazards inherent to the environment or activity by the placement of the port-o-johns; . . . failed to establish pathways to reduce patron exposures and risks; . . . failed to factor the proper placement of event elements in order to unnecessarily expose patrons to known and foreseeable hazards resulting from the use of unimproved pathways; . . . and failed to provide clear indicators and warnings of the potential for trip hazards upon ingress and egress of the

15

> port-o-johns in order for patrons to be reminded to observe for hazards within the unimproved pathway.

The deposition testimony of Mr. Gaulton and the affidavit of Mr. Avery produced by Mrs. Beal does not support any finding that FQF and Audubon Institute's alleged failure to warn of the alleged defect was willful or malicious. There was no evidence in the record to suggest that FQF and Audubon Institute took a conscious course of action likely to cause injury with an indifference to the consequences. Mr. Gaulton testified that FQF and Audubon Institute worked together to determine the layout for the festival. He stated that the Audubon Institute provided maintenance and grounds-keeping year-round for Woldenberg Riverfront Park. Mr. Avery's opinion that the pathway provided for access to the portable toilets was not a reasonably safe walking surface for patrons attending the event did not reference any specific facts to support a finding of intentional or grossly negligent conduct. Further, as FQF and Audubon Institute point out, Mrs. Beal walked past the tree on her way to the portable toilets without incident; she acknowledged she was not attentive to where she was walking; and she admitted that she was more concerned about moving about the groups of people attending the festival. In the absence of evidence to demonstrate FQF and Audubon Institute acted in conscious disregard of the alleged dangerous condition, Mrs. Beal has failed to meet her burden of proof.

*Open and Obvious Hazard*

In her final assignment of error, Mrs. Beal asserts that the trial court erred in finding that the tree root was an open and obvious hazard. However, because we find FQF and Audubon Institute are immune from liability pursuant to Louisiana's recreational use immunity statutes and find summary judgment appropriate on this

basis, we pretermit discussion of whether the alleged defect was an open and obvious hazard.

## *CONCLUSION*

Accordingly, like the trial court, we find FQF and Audubon Institute are immune from liability pursuant to La. R.S. 9:2791 and La. R.S. 9:2795. In light of our finding of statutory immunity barring the instant suit, we pretermit discussion of whether the alleged defect was open and obvious. Therefore, the trial court's granting of summary judgment in favor of FQF and Audubon Institute was appropriate.

## *DECREE*

For the foregoing reasons, we affirm the trial court's judgment granting summary judgment in favor of FQF and Audubon Institute and dismissing Mrs. Beal's claims against them.

**AFFIRMED**